# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **VERNON WHITE,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civil No. TMD 16-2447** |
| v. | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant.[1] | * | |

************

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## <u>ALTERNATIVE MOTION FOR REMAND</u>

Plaintiff Vernon White, Jr., seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 15).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.

I

**Background**

Plaintiff was born in 1966, has a high-school education, and previously worked as a plumber, construction worker, and laborer/cleaner. R. at 26, 38-39, 222. Plaintiff protectively filed applications for DIB and SSI on May 24, 2012, alleging disability beginning on December 16, 2011, due to diabetes, high blood pressure, heart and prostate problems, blood clots, and a learning disability. R. at 14, 68, 192-204, 221. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 68-127, 132-40. On October 9, 2014, ALJ Geraldine H. Page held a hearing where Plaintiff and a vocational expert ("VE") testified. R. at 34-67. On January 21, 2015, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of December 16, 2011, through the date of the decision. R. at 11-33. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 26, 2016. R. at 1-5, 8-10, 310-11, 646-47. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 30, 2016, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

### Summary of Evidence

A.  **Kelly Zinna, Psy.D.**

On September 14, 2012, Kelly Zinna, Psy.D., conducted a consultative psychological examination of Plaintiff. R. at 23-24, 544-49. Dr. Zinna's diagnoses included Plaintiff's history of severe, major depressive disorder; alcohol dependence in sustained remission; learning disorder not otherwise specified; rule out attention-deficit hyperactivity disorder; attention, comprehension, learning, and memory problems; social isolation; and a GAF score of 45.[3] R. at 546. Dr. Zinna opined:

> Given test findings, [Plaintiff] can be expected to perform at average or near average levels on most intellectual and cognitive tasks. However[,] when faced with memory tasks, [Plaintiff] is likely to show marked deficits. He will do better on verbally[]based tasks as opposed to those requiring visual-spatial processing and/or psychomotor speed. His best performance will be achieved when directives are presented concretely, with verbal instructions and visual examples, additional time for rehearsal, repetition and external checks on his integration and understanding. He may also benefit from environmental cues.

R. at 546. Dr. Zinna also found that Plaintiff's ability to understand and follow simple instructions independently was within normal limits. R. at 549.

---

[3] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

B.   **State Agency Medical Consultants**

On October 1, 2012, a state agency medical consultant, S.K. Najar, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 73-75, 85-87. Dr. Najar opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 73, 85. Plaintiff occasionally could stoop and frequently could balance, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 73-74, 85-86. Although he was to avoid all exposure to hazards, such as machinery and heights, Plaintiff had no manipulative, visual, or communicative limitations. R. at 74, 86.

On October 2, 2012, a state agency consultant, K. Wessel, Ed.D., using the psychiatric review technique (the "PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairment under Listing 12.02 relating to organic mental disorders (R. at 71-72, 83-84). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02. Dr. Wessel opined that, under paragraph B of the applicable listing, Plaintiff's mental impairment caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration. R. at 72, 84. Dr. Wessel did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 72, 84. Dr. Wessel thus assessed Plaintiff's mental RFC and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; and to (2) maintain attention and concentration for extended periods. Plaintiff otherwise was not significantly limited. R. at 75-76, 87-88.

On March 22, 2013, another state agency consultant, M. Ahn, M.D., again assessed Plaintiff's physical RFC. R. at 99-101, 113-15. Dr. Ahn opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 99, 113. Dr. Ahn further opined that Plaintiff frequently could balance and occasionally could climb, stoop, kneel, crouch, and crawl. R. at 99-100, 113-14. Although he was to avoid all exposure to hazards, such as machinery and heights, Plaintiff had no manipulative, visual, or communicative limitations. R. at 100, 114.

On March 25, 2013, another state agency consultant, Elliott Rotman, Ph.D., again used the PRT to evaluate Plaintiff's mental impairment under Listing 12.02. R. at 97-98, 111-12. Dr. Rotman opined that, under paragraph B of the applicable listing, Plaintiff's mental impairment caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration. R. at 98, 112. Dr. Rotman did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 98, 112. Dr. Rotman thus assessed Plaintiff's mental RFC and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; and to (2) maintain attention and concentration for extended periods. Plaintiff otherwise was not significantly limited. R. at 101-02, 115-16.

C. **Hearing Testimony**

1. **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in her decision:

[Plaintiff's] hearing testimony reported having a special education, being paralyzed from the waist down, inability to stand up, walk over 10 feet, or lift over 10 pounds, difficulty bending over, use of a cane, not doing any chores inside or outside, and being picked on and bullied by people. However, he also reported having breakfast, watching TV all day long, letting out, playing with and feeding the dog, washing clothes with the help of neighbors, and taking medications. [Plaintiff's] adult function reports note loss of energy, vision problems, trouble walking and standing, leaning on things, and staying by himself in the bedroom like a hermit. However, he also reported taking his medications, making coffee, taking care of a pet dog, watching TV, checking the mail, independent personal care, preparing simple meals, taking out trash, cleaning, doing laundry, driving, walking, watching movies, playing video games, going outside daily, shopping in stores, and attending AA meetings. He reported no problems getting along with family, friends, neighbors, or others, and said he got along with authority figures "good". He reported problems with memory, completing tasks, concentration, understanding, and following instructions, but he also reported being able to follow spoken instructions, and handle stress and changes in routine "good", pay bills, count change, and use a checkbook/money orders [R. at 228-35, 258-69, 272-87].

[Plaintiff] testified he was unable to work due to blood clots, diabetes, hand and leg nerve damage, cataract surgery, and past rotator cuff surgery left shoulder, back and right leg problems, difficulty bending over, and use of a non-prescribed cane. [Plaintiff] further reported high blood pressure, heart problems, learning disability, hernia, slipped disc, manic depression, a heart attack in 2010, feet swelling, leg weakness, poor vision, and prostate cancer.

R. at 25; *see* R. at 38-58.

2. **VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, work experience, and the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the unskilled, light jobs of assembler, packer or folder, and sorter.[4] R. at 60-62.

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). "Light

An individual who would miss more than two days of work a month or who would be "off task" 11% to 21% of the workday could not perform any work. R. at 63-64. According to the VE, his testimony was consistent with the *Dictionary of Occupational Titles*.[5] R. at 64.

## III

### Summary of ALJ's Decision

On January 21, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of December 16, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as an assembler, packer/folder, or sorter. R. at 16-27. The ALJ thus found that he was not disabled from December 16, 2011, through the date of the decision. R. at 27.

> In so finding, the ALJ found that, with regard to concentration, persistence, or pace,
>
> [Plaintiff] has moderate difficulties. As aforementioned, [Plaintiff's] hearing testimony reported having special education classes, inability to stand up, walk over 10 feet, or lift over 10 pounds, difficulty bending over, and use of a cane. However, he also reported watching TV all day long and taking his medications.

---

work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* §§ 404.1567(b), 416.967(b).

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

> [Plaintiff's] adult function reports noted loss of energy, vision problems, and trouble walking and standing, leaning on things. However, he also reported making coffee, taking care of a pet dog, watching TV, checking the mail, independent personal care, preparing simple meals, taking out trash, cleaning, doing laundry, driving, walking, watching movies, and playing video games [R. at 228-35, 258-69, 272-87,] all of which require the ability to concentrate. The undersigned agrees with the State agency psychological consultants that [Plaintiff] has a moderate restriction in this area due to mental impairment.

R. at 18-19.

The ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and walk for six hours each in an eight-hour workday. He can occasionally climb ramps and stairs, kneel, stoop, crouch, and crawl. He can frequently balance and reach overhead with the left upper extremity. He should avoid concentrated exposure to extreme temperatures, excess humidity, and pulmonary irritants. He should avoid exposure to hazardous machinery, unprotected heights, climbing ladders, ropes, scaffolds, or work on vibrating surfaces. He is able to understand, remember, and carry out simple instructions in repetitive, unskilled work. He is limited to work that involves only occasional interaction with the general public.

R. at 20.

The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 21. The ALJ gave "great weight" to Dr. Zinna's opinion that Plaintiff's ability to understand and follow simple instructions independently was within normal limits, "with exception of the GAF assessment, which is inconsistent with Dr. Zinna's mainly benign clinical findings." R. at 24. The ALJ also gave "great weight" to the opinions of Drs. Wessel and Rotman "as consistent with the evidence of record as a whole, except [Plaintiff's] concentration, persistence or pace is found to be mild to moderate based on the evidence in the record." R. at 24.

8

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that substantial evidence does not support the ALJ's assessment of his RFC because the ALJ failed to evaluate his obesity, to explain the weight given to the opinions of his treating sources, and to account for his moderate difficulties in maintaining concentration, persistence, or pace. For the reasons discussed below, the Court remands this matter for further proceedings.

Social Security Ruling[7] 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff argues that, in assessing his RFC and in presenting hypothetical questions to the VE, the ALJ failed to consider his moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Mot. Summ. J. 21-22, ECF No. 14-1. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

Here, the ALJ's hypothetical questions to the VE and the corresponding RFC assessment limiting Plaintiff to understanding, remembering, and carrying out "simple instructions in repetitive, unskilled work" that "involves only occasional interaction with the general public" (R.

14

at 20; *see* R. at 61) do not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638; *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(2). *But see Hillard v. Colvin*, Civil Action No. ADC-15-1442, 2016 WL 3042954, at *6 (D. Md. May 26, 2016) ("The ALJ additionally accounted for Plaintiff's limitation in concentration and persistence by restricting him to work 'without frequent interaction with co-workers or the public.'"); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."). "[T]he issue in this case is not whether the record contains evidence that might support the ALJ's conclusions; it is whether the ALJ explained the apparent discrepancy between her step three finding and her RFC assessment." *Talmo*, 2015 WL 2395108, at *3. In short, neither the ALJ's RFC assessment nor her hypothetical questions to the VE address Plaintiff's ability to stay on task, and the Court is left to guess how the ALJ accounted for this ability despite finding that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. Because the inadequacy of the ALJ's analysis frustrates meaningful review, remand under the fourth sentence of 42 U.S.C. § 405(g) is appropriate, *see Mascio*, 780 F.3d at 636, and the Court need not address Plaintiff's remaining arguments.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 15) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**. Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: May 1, 2017

/s/
Thomas M. DiGirolamo
United States Magistrate Judge